**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ERNEST FLATT,**

      **Plaintiff,**

                            **Civil Action 2:18-CV-1278**

      **v.**                            **Magistrate Judge Chelsey M. Vascura**

**ASPEN DENTAL MANAGEMENT,**
**INC.,** *et al.***,**

      **Defendants.**

## OPINION AND ORDER

Plaintiff, Ernest Flatt ("Flatt"), brings this action for discrimination and wrongful termination under Ohio law against Defendants, Aspen Dental Management, Inc. ("Aspen") and Dr. John W. Ihnen ("Ihnen"). This matter is now before the Court on Aspen's Motion to Transfer Venue, ECF No. 13, and the parties' related memoranda. For the reasons that follow, the Court **GRANTS** this Motion.

### I.  BACKGROUND

Aspen is a business management company for dental offices across the United States. Aspen is a Delaware corporation with its principal place of business in East Syracuse, New York. On June 21, 2010, Aspen hired Flatt as a Lab Technician in Ohio. Though Flatt was originally hired as an hourly employee in a fixed location, he became a salaried employee with job titles and travel responsibilities that evolved throughout his employment with Aspen. Most recently, Flatt was employed as a Territory Manager of Lab Support assigned to the Kentucky Territory, with responsibility for providing laboratory support to nineteen offices in Kentucky

and two offices in West Virginia. Regardless of his changing positions with Aspen, Flatt always remained domiciled in Ohio.

Ihnen is a dentist who lives and works in the Louisville, Kentucky area. Ihnen owns, in whole or in part, twelve of the nineteen Kentucky dental offices that were under Flatt's responsibility. One of these locations in Louisville, known as the "Dixie Office," lies at the heart of the parties' dispute.

On July 11, 2018, Ihnen informed Flatt that he was no longer welcome to work in his Kentucky offices. On July 12, 2018, Aspen terminated Flatt's employment. Flatt initiated the instant action in the Court of Common Pleas for Franklin County, Ohio. (ECF No. 2.) Aspen then removed the action to federal court based on diversity jurisdiction. (ECF No. 1.) Subsequently, in May 2019, Aspen filed the subject Motion to Transfer Venue, seeking an order transferring this action to the Western District of Kentucky, Louisville Division. (ECF No. 13.)

## II.    STANDARDS

The Court's authority to transfer venue lies in multiple statutes, including 28 U.S.C. §§ 1404(a), 1406(a), and 1631. Under § 1404(a), when "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." Section 1404(a) presupposes that venue is proper in the original forum. *Elcheikhali v. Geico Ins. Co.*, No. 1:09 CV 2434, 2010 U.S. Dist. LEXIS 3857, at *4–5 (N.D. Ohio Jan. 19, 2010) ("The purpose of the provision is to transfer actions brought in a <u>permissible</u> yet inconvenient forum.") (emphasis in original) (relying on *Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir. 1980)). When venue is improper in the original forum, § 1406(a) enables a district court, in lieu of dismissal, to transfer venue "if it be in the interest of justice . . . to any district or division in which it could have been brought." *Id.* A similar

provision in § 1631 authorizes a district court to transfer a case to an appropriate district, "in the interest of justice," when the court finds "a want of jurisdiction." *Stanifer v. Brannan*, 564 F.3d 455, 456-457 (6th Cir. 2009). The Sixth Circuit interprets "jurisdiction" to include both subject matter and personal jurisdiction. *Jackson v. L&F Martin Landscape*, 421 F. App'x 482, 483 (6th Cir. 2009). These venue statutes confer broad discretion to district courts ruling on a motion to transfer. *Id.* at 483–84.

Aspen has moved for transfer under § 1404(a).[1] As the movant, Aspen bears the burden of showing that transfer is appropriate. *Inter-National Found. Corp. v. Disney 1999 Ltd. P'ship*, No. 2:09-cv-983, 2010 U.S. Dist. LEXIS 138283, *5 (S.D. Ohio Apr. 9, 2010). Deciding this Motion requires a two-step analysis by the Court: (1) whether the action could have initially been brought in the court where transfer is sought and, if so, (2) whether transfer is appropriate under a balance of convenience and justice factors. *Badger v. Speedway, LLC*, No. 3:14-cv-7, 2014 U.S. Dist. LEXIS 184426, *2–3 (S.D. Ohio Dec. 5, 2014). Part one of this § 1404(a) analysis is satisfied if: (1) the transferee court has jurisdiction over the subject matter of the action; (2) venue is proper in the transferee court; and (3) the defendants are amenable to process issuing out of the transferee court. *Sky Tech. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000).

In resolving part two of this § 1404(a) analysis, a district court evaluates various private-interest factors (which have been recited in a number of ways), including: (1) the convenience of the parties and witnesses, (2) the accessibility of the evidence, (3) the availability of compulsory process, (4) the cost of obtaining willing witnesses, (5) the practical problems of trying the case

---

[1] Removal of an action from state court to federal court does not estop the removing party from seeking to have the case transferred pursuant to 28 U.S.C. § 1404(a). *Midwest Motor Supply Co. v. Kimball*, 761 F. Supp. 1316, 1317 (S.D. Ohio 1991).

most expeditiously and inexpensively, and (6) the interests of justice. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). Courts may also consider public-interest factors such as (1) court congestion, (2) local interest in deciding the controversy at home, and (3) in diversity cases, the interest of conducting the trial in the forum of the governing law. *Youngblood v. Life Ins. Co. of N. Am.*, No. 3:16-CV-34-TBR, 2016 U.S. Dist. LEXIS 50081, *2–3 (W.D. Ky. 2016) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013)). Ultimately, the transfer statute provides district courts with broad discretion to determine the appropriateness of transfer on an individualized, case-by-case basis. *Reese*, 574 F.3d at 320; *Inter-National Found. Corp.*, 2010 U.S. Dist LEXIS 138283, at *5.

## III.    ANALYSIS

The Court's analysis in this diversity case boils down to a balance of convenience and justice factors. The Court finds merit in Aspen's showing of jurisdiction and venue for the proposed transferee court. (ECF No. 13, PAGEID # 79–80; 28 U.S.C. § 1391(b)(2).) Significantly, Flatt acknowledges that he could have filed his claims in the Western District of Kentucky. (ECF No. 14, PAGEID # 99.) Thus, the only dispute among the parties is whether Aspen has adequately shown that the Western District of Kentucky, Louisville Division is a more appropriate choice for venue such that transfer away from this district is warranted.

### A.    Court's *Sua Sponte* Consideration of Transfer Pursuant to 28 U.S.C. §§ 1406(a) and 1631 for Lack of Personal Jurisdiction

The Court would be remiss if it proceeded with its § 1404(a) analysis and overlooked the outstanding question of personal jurisdiction over Defendant Ihnen. Defendants have made it abundantly clear that if the instant motion is denied they will be filing a motion to dismiss the claims against Ihnen for lack of personal jurisdiction in Ohio. All of the evidence before this Court shows that Defendants would be justified in seeking such dismissal.

If this Court lacks personal jurisdiction over Ihnen then it *cannot* grant transfer pursuant to § 1404(a). The Sixth Circuit has specifically limited § 1404(a) transfers to "actions commenced in a district court where both personal jurisdiction and venue are proper." *Newberry v. Silverman*, 789 F.3d 636, 641 (6th Cir. 2015); *Jackson*, 421 F. App'x at 483 ("[A] transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants."). Though no party has raised this issue, federal courts have the power to transfer cases *sua sponte* under 28 U.S.C. §§ 1406(a) and 1631. *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 738 (6th Cir. 2003); *Krawec v. Allegany Co-op Ins. Co.*, No. 1:08-CV-2124, 2009 U.S. Dist. LEXIS 57792, *10–11 (N.D. Ohio July 7, 2009); *see, e.g.*, *Elcheikhali*, 2010 U.S. Dist. LEXIS 3857, at *10–11, 14–15 (denying the defendant's pending § 1404(a) motion and instead transferring on own accord pursuant to § 1406(a) due to finding lack of personal jurisdiction); *Jones v. Herbert Kannegiesser GmbH*, No. 5:06-cv-39, 2006 U.S. Dist. LEXIS 81251, *7–8 (W.D. Mich. Nov. 7, 2006) (noting the mandatory cast of § 1631's instructions when denying the defendant's motion to dismiss and instead *sua sponte* ordering transfer under § 1631 to cure possible jurisdictional defect).

Therefore, this Court must ascertain whether it can exercise personal jurisdiction over Ihnen before it can determine whether and on what basis transfer is appropriate.[2]

---

[2] It technically matters which avenue of transfer is used in this diversity action because it determines which state's law the transferee court will apply to the case. When a diversity case is transferred under § 1404(a), the substantive law (including choice-of-law rule) of the transferor court applies. On the other hand, when a diversity case is transferred under § 1406(a) or § 1631, the substantive law of the transferee court applies because the case was originally filed in the wrong venue. *Newberry*, 789 F.3d at 640. The Court believes that, as applied to the instant matter, the result will be a distinction without practical difference. For tort claims in Ohio, courts apply the "most significant relationship test." *Muncie Power Prods., Inc. v. United Techs. Auto, Inc.*, 328 F.3d 870, 873–74 (6th Cir. 2003); *Grubb v. Day to Day Logistics, Inc.*, No. 2:14-CV-01587, 2015 U.S. Dist. LEXIS 86543, at *24–26 (S.D. Ohio July 2, 2015). Whereas in Kentucky, courts apply a more lenient "significant contacts test." *Hackney v. Lincoln Nat'l Fire Ins. Co.*, 657 F. App'x 563, 571 (6th Cir. 2016). Because the relationship and contacts in the case *sub judice* are so overwhelmingly connected to Kentucky versus Ohio, there is no question that Kentucky law would apply under both standards.

**1. Personal Jurisdiction Question**

The Court recognizes Defendants' attempt to sidestep additional briefing or hearing on the jurisdictional question, thus avoiding the attendant costs and delays in the case, by asking the Court to transfer to a forum with undisputed jurisdiction. The Court too has great interest in processing this case in the most efficient and inexpensive manner. And though it would be easier for the Court to simply determine transfer under § 1404(a), thus punting on the jurisdictional issue, it would be an incorrect means to the end, especially in this case where the motion to transfer is opposed by Plaintiff.[3]

Nonetheless, the Court finds, based on the pleadings, declarations and discovery materials before it, as viewed in a light most favorable to Flatt, that Flatt has not made even a *prima facie* showing of personal jurisdiction over Ihnen in this Ohio forum. Flatt had the opportunity (and obligation) to plead facts supporting personal jurisdiction as to both Defendants in his Complaint. Flatt also had ample opportunity to respond in opposition to Aspen's direct and repeated arguments challenging the personal jurisdiction of Ihnen in this forum. But Flatt has failed to carry even a minimal burden of showing that such jurisdiction exists.

When a district court rules on jurisdictional grounds solely on the basis of written materials, without conducting an evidentiary hearing, a plaintiff need only establish a *prima facie* case of jurisdiction, *i.e.* by demonstrating facts sufficient to support a finding of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007); *Priess v. Fisherfolk*, 535 F. Supp. 1271, 1275 (S.D. Ohio 1982). In determining whether a plaintiff has met this burden, the district court must consider the pleadings, affidavits, and any

---

[3] As Aspen has pointed out, the Court in *Smith v. Gen. Info. Sols., Inc.*, No. 2:18-CV-230, 2018 U.S. Dist. LEXIS 143527 (S.D. Ohio Aug. 23, 2018) transferred a case pursuant to § 1404(a) without first resolving the jurisdictional issue. However, *Smith* involved a distinguishable situation where the plaintiff was the party seeking transfer, and the defendant did not oppose transfer.

documentary evidence before it in a light most favorable to the plaintiff, and the court cannot weigh any controverting assertions of the party raising the jurisdictional deficit. *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 153 (6th Cir. 1997); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). A court is not required, however, to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff or readily ascertainable from public records. *Kerry Steel, Inc.*, 106 F.3d at 153. If all of the specific facts alleged by a plaintiff collectively fail to state a *prima facie* case for jurisdiction, then the court may take action for want of jurisdiction.

When examining personal jurisdiction in a diversity action, federal courts apply the law of the forum state (here, Ohio's long-arm statute, Ohio Revised Code § 2307.382), subject to the limits of the Due Process Clause of the Fourteenth Amendment. *CompuServe, Inc.*, 89 F.3d at 1262. Personal jurisdiction over an out-of-state defendant only arises when sufficient minimum contacts exist "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Air Prods.*, 503 F.3d at 549 (relying on well-established *International Shoe* standard). Depending on the type of minimum contacts in a case, personal jurisdiction can either be "general" or "specific." *Id.* at 549–50.

General jurisdiction exists when a defendant's contacts with the forum state are "of such a continuous and systemic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 677 (6th Cir. 2005) (internal citations omitted). Specific jurisdiction exists only when a defendant's contacts with the forum state are related to the case at issue. *Id.* The Sixth Circuit has established a three-part test for determining whether specific jurisdiction exists:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Turning to the case at bar, the Court must first address Flatt's mistaken tendency in his briefing to merge the co-Defendants into one party and treat the actions of one as synonymous with the other. In his Complaint Flatt separately identifies Aspen and Ihnen, factually recognizing them as independent parties. (*See* Compl., ECF No. 2, PAGEID # 25, ¶¶ 2–3, 6, 8–9, 12, 16–20 (addressing Aspen) and ¶¶ 5, 7–9, 37–38, 86 (addressing Ihnen).) Additionally, the discovery documents that Flatt attached as support for his opposition brief, and the mostly uncontested declarations from Aspen's agents, further this conclusion. This Court's treatment of the written materials in the light most favorable to Flatt does not permit Flatt to attribute to co-Defendant Ihnen any actions taken by Aspen within its employment of Flatt or its connections to Ohio. The parties must be considered independently. *See, e.g.*, *Olsavsky v. Five Star Quality Care, Inc.*, No. 4:08CV1227, 2009 U.S. Dist. LEXIS 142423 (N.D. Ohio Mar. 4, 2009) (denying plaintiff's showing of personal jurisdiction over out-of-state manager defendant, finding plaintiff's repeated confusion of the corporate-employer defendant with the individual defendant to be meritless).

Applying the long-standing principles of personal jurisdiction here, then, this Court finds that Flatt has not established any basis for the exercise of personal jurisdiction over Ihnen, neither generally nor specifically. Every general connection to the State of Ohio that Flatt raises in his Complaint is alleged against Aspen, not Ihnen: *Aspen* has an agent for statutory process located in Franklin County, Ohio (¶ 3); *Aspen* regularly does or solicits business, or engages in

any other persistent course of conduct in Ohio (¶ 12); the territory that Flatt managed *for Aspen* included areas of Ohio (¶ 18); and *Aspen* would assign Flatt work to perform in Ohio (¶ 19). (ECF No. 2.) Flatt attempts in his opposition brief to lump Ihnen into this Ohio connection, arguing that personal jurisdiction exists in Ohio because of the business located at 1501 Hilliard Rome Road in Columbus, Ohio, which Flatt states "Defendants own and/or operate." (ECF No. 14, PAGEID # 99–100.) But this bare assertion is discredited by public record. A comparative search of the business records of the respective Ohio and Kentucky state dentistry boards reflects that Dr. Ihnen has only ever been licensed to practice dentistry in the State of Kentucky. Thus the Court takes judicial notice that Ihnen is not operating in Ohio. Further, a search of Aspen's corporate website verifies that the identified Aspen-managed office in Ohio is owned by a Dr. Lakireddy, not Dr. Ihnen. Fed. R. Evid. 201(b)(2); *see* 1 Weinstein's Federal Evidence § 201.12 (2019). Therefore, no grounds for general jurisdiction exist.

The Court, likewise, has carefully identified the allegations that Flatt directs at Ihnen and finds them insufficient to make a *prima facie* showing of specific personal jurisdiction in Ohio. The vast majority of the events that Flatt outlines in his Complaint as leading to his cause of action revolve around the Ihnen-owned offices in Kentucky, especially the Dixie and Georgetown locations. (*See* Compl., ECF No. 2, ¶¶ 21–47, 58–76.) In his opposition brief Flatt alleges, at most, that the following actions by Ihnen implicate Ohio: (1) that Ihnen knew that Flatt was working from his Ohio home once a week (on Fridays); (2) that on a Friday in June 2018, from his residence in Ohio, Flatt drafted and emailed his end-of-week report, which communication Ihnen received; (3) that after this June report, in retaliation for what was included in the report, Ihnen ended their "professional relationship" and Flatt's "employment under [Ihnen's] offices;" and (4) that Ihnen's actions led, or at least contributed, to Aspen's

decision to terminate Flatt's employment, thereby causing harm in Ohio, the place of Flatt's known residence. (Mem. in Opp'n, ECF No. 14, PAGEID # 96–97, 100–03; ECF No. 14-1, PAGEID # 177–79.[4]) But these allegations, even if treated as true for purposes of this jurisdictional analysis, fail to satisfy even a minimal showing of specific jurisdiction over Ihnen in this forum.

The Court first considers if any of these allegations fall under the type of conduct included in Ohio's long-arm statute. Flatt does not allege Ihnen himself regularly transacts any business, supplies goods or services, has real property, provides insurance, or took action or failed to act within the State of Ohio, therefore eight of the nine bases are eliminated, leaving only (A)(6) to consider.[5] *See* Ohio Rev. Code § 2307.382. This subsection requires that Ihnen have "caus[ed] tortious injury in this state to any person by an act outside this state [when] committed with the purpose of injuring persons, [and] when he might reasonably have expected that some person would be injured thereby in this state." Ohio Rev. Code § 2307.382(A)(6).

Ihnen's actions squarely do not fit within this provision. Ihnen's alleged acts towards Flatt inside of Kentucky, while Flatt was located in Kentucky, did not cause injury within Ohio. Even if Ihnen intentionally tried to hurt Flatt through the alleged retaliatory and discriminatory actions that resulted in termination, as Flatt alleges, all these actions took place in Kentucky, thus

---

[4] In his brief, Flatt raises several other connections to his employment with "Defendants" in Ohio, relying on discovery documents rather than an affidavit to support his claims. (Mem. in Opp'n, ECF No. 14, PAGEID # 95.) Yet, Flatt misrepresents the substance of the very documents he attaches in support and again improperly merges the Co-Defendants. The referenced documents are dated years before Flatt was promoted to his position of Territory Manager of Lab Support and assigned to the Kentucky area where Ihnen is located. (*See* ECF No. 14-1, PAGEID # 191–200; Decl. of Roy Spillers, ECF No. 13-1, PAGEID # 90.)

[5] Flatt argues subsection (A)(4) also comes into play by Ihnen's actions in Kentucky, but he ignores the second half of this provision requiring Ihnen to have regular business dealings or other persistent course of conduct within Ohio. *See* Ohio Rev. Code § 2307.382. Flatt does not make such allegations, so (A)(4) does not apply. *See Costaras v. NBC Universal, Inc.*, 409 F. Supp. 2d 897, 904 (N.D. Ohio 2005) ("Plaintiffs have failed to demonstrate, or even allege, that [Defendants] regularly engage in any persistent course of conduct in Ohio, thus making (A)(4) inapplicable to them.").

the actual and anticipated harm was in Kentucky. This result is not changed by Flatt's Ohio residency, any knowledge that Ihnen had of such residency, or the fact that Ihnen received an email in Kentucky from Ohio that allegedly initiated the tortious conduct at issue here. *See, e.g.*, *Stern's Dep't Stores v. Herbert Mines Assocs.*, No. C-1-98-844, 1999 U.S. Dist. LEXIS 10805, *24–26 (S.D. Ohio July 8, 1999) (finding the requirements of § 2307.382(A)(6) not satisfied because plaintiff Ohio corporation was allegedly injured in New Jersey by defendant New Jersey company and "[t]he fact that [plaintiff] is incorporated in Ohio does not make Ohio the locus of the injury"); *Olsavsky*, 2009 U.S. Dist. LEXIS 142423, at *5–6 (denying Ohio plaintiff's attempt to have personal jurisdiction exercised against Pennsylvania supervisor defendant because the alleged tortious conduct occurred outside of the state, while plaintiff was outside the state, and the "fact that Plaintiff resides in Ohio does not make Ohio the locus of the injury for purposes of § 2307.382(A)(6)").

For similar reasons, Flatt's allegations do not survive due process requirements. As already discussed, Flatt's claims against Ihnen arise out of events that occurred in and around the Kentucky offices where Flatt provided laboratory support, as an employee of Aspen, to Ihnen, a Kentucky dentist and business owner. Even if Flatt could somehow show that Ihnen were also considered his "employer," such employment with Ihnen would be located only in Kentucky.

Flatt has not offered any evidence demonstrating that Ihnen purposefully availed himself, in any manner, "of the privilege of acting in [Ohio] or causing a consequence in [Ohio]." *S. Mach. Co.*, 401 F.2d at 381. To satisfy this requirement, Flatt would have to show that Ihnen's contacts with Ohio are "based on his own affiliation with the State, not based on the 'random,' 'fortuitous,' or 'attenuated' contacts" he made by interacting with Flatt or Aspen, who are affiliated with Ohio. *Bulso v. O'Shea*, 730 F. App'x 347, 349–50 (6th Cir. 2018) (quoting

*Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014)). Flatt has not and cannot make such a showing.

Rather, it is undisputed that Ihnen lives and works only in Kentucky. Also, Ihnen did not reach out to Ohio in any manner to employ Flatt. Flatt was already an employee of Aspen when he was assigned to the Kentucky territory, which included working on-site in Ihnen's offices. Ihnen's purposeful availment of a business arrangement with Aspen, which does business in Ohio and hired an Ohio resident, does not equate to Ihnen purposefully availing himself of the forum. *See Olsavsky*, 2009 U.S. Dist. LEXIS 142423, at *7–8.

This is exactly the kind of attenuated connection to a state that due process protects against. *See Bulso*, 730 F. App'x at 350 ("[M]ere injury to a forum resident is not a sufficient connection to the forum to establish jurisdiction [thus] there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum.") (internal quotations omitted); *see also Active Packet, LLC v. NetGen, Inc.*, No. 2:19-cv-00039, 2019 U.S. Dist. LEXIS 104328 (M.D. Tenn. June 21, 2019) (finding lack of personal jurisdiction over nonresident defendant because "the fact a plaintiff may have felt an effect of another's acts in his or her home state is not enough, in and of itself, to establish personal jurisdiction"); *Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, 376 F. Supp. 3d 647 (E.D. N.C. 2018) (refusing to exercise personal jurisdiction in North Carolina forum over defendant Maryland corporation because the plaintiff employee, although hired and terminated while a North Carolina resident, had chosen to telecommute and work from home for her own reasons, and none of the defendant's actions were made with the intent to reach North Carolina).

Therefore, because the only connection presented here between Ihnen and the State of Ohio is his relationship to Flatt and Aspen in Kentucky, there can be no basis for exercising specific jurisdiction over Ihnen. Therefore, this Court holds that personal jurisdiction does not

exist over Ihnen in this forum. The Court now must consider whether transfer, as opposed to dismissal, is appropriate under §§ 1406(a) and 1631.

### 2. "Interests of Justice" Examination

Both §§ 1406(a) and 1631 allow for transfer when "in the interest of justice." The Court concludes such justice concerns dictate transfer in this case.

Determining whether a transfer is in the interest of justice starts with an assessment of whether personal jurisdiction would be obtained in the transferee court. *Flynn*, 95 F. App'x at 739. Here, it is undisputed that Ihnen would be subject to personal jurisdiction in the district in which he lives and works. Thus transfer would cure the jurisdictional deficit in this forum and further the judiciary's ultimate goal of allowing cases to be decided on their substantive merits rather than on procedural grounds. *Id.* at 741.

This Court also believes the interest of justice would be better served by transferring instead of dismissing. *See Grigor v. Starmark Hosp. Grp. LLC*, No. 2:10-cv-20, 2010 U.S. Dist. LEXIS 57385, *17–18 (S.D. Ohio June 10, 2010) (mooting defendants' § 1404(a) motion due to lack of personal jurisdiction but finding the interests of justice under § 1406(a) favored transfer instead of dismissal). The alternate course of dismissing Ihnen and proceeding only against Aspen in this forum, thereby requiring Flatt to start over by refiling his case against Ihnen separately in the Western District of Kentucky, serves no useful purpose. Instead, by transferring this case in its entirety, this Court avoids piecemeal litigation and allows a more expeditious and orderly adjudication of the claims for all parties involved. *Krawec*, at *23 ("Most critical here is the interest in avoiding piecemeal litigation[.]"); *see also Costaras*, 409 F. Supp. 2d at 907–08 (N.D. Ohio 2005) ("The interests of justice would be served by transferring the entire case to a district where all parties may be joined in one suit rather than in severing the claims.").

In sum, this Court finds no basis for finding personal jurisdiction over Ihnen in this forum and further concludes that the interests of justice merit transfer under §§ 1406(a) and 1631.

**B.**     **Aspen's Motion to Transfer Venue Under § 1404(a)**

With only Ihnen's claims subject to transfer under §§ 1406(a) and 1631, Aspen's motion under § 1404(a) still remains to be addressed. Because Flatt concedes that this action could have originally been brought in the Western District of Kentucky, this Court turns immediately to an evaluation of the balancing test used for § 1404(a) motions. Applying the equities in this case, the Court easily finds that private and public-interest factors weigh heavily in favor of transfer.

The Court considers the private interest concerns related to the convenience of the parties and witnesses (including relative costs of involvement in each forum), the practical problems of trying this case in the most expeditious and inexpensive manner, and the interests of justice to be the most compelling grounds for transfer. Flatt argues that his choice of this forum should trump any of these other private-interest factors. This Court disagrees.

Ordinarily a plaintiff's choice of forum is given a large measure of deference when deciding whether to grant a motion to change venue, especially where, as here, the plaintiff lives in the forum. *Neff Ath. Lettering Co. v. Walters*, 524 F. Supp. 268, 272–73 (S.D. Ohio 1981). But though a plaintiff's choice should be given weight, this factor is not automatically dispositive. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 413 (6th Cir. 1998). Moreover, the weight of a plaintiff's choice of forum is lessened in certain situations, such as exist in Flatt's case, when little to none of the conduct giving rise to the action occurred in the chosen forum and where the case has been removed to federal court. *Neff*, 524 F. Supp. at 272–73*; see First Bank of Marietta v. Bright Banc Sav. Assoc.*, 711 F. Supp. 893, 897 (S.D. Ohio 1988) (granting transfer, finding deference to plaintiff's freedom to select his forum had "minimal value" because the cause of

action had little connection with plaintiff's chosen forum); *Sky Tech. Partners, LLC*, 125 F. Supp. 2d at 292 (granting transfer, recognizing that, because case had been removed, plaintiff was technically no longer in chosen forum of state court, so plaintiff's choice was not as significant to court's transfer decision).

This Court recognizes that the convenience of witnesses is a primary concern. *Midwest Motor Supply Co. v. Kimball*, 761 F. Supp. 1316, 1319 (S.D. Ohio 1991). In this case, Flatt is the sole material witness residing in Ohio. Though he originally claimed emotional distress damages with Ohio treating physicians as possible witnesses, this is no longer true.[6] So all of the remaining material witnesses, those with knowledge of the events underlying Flatt's claims, are located in Kentucky by virtue of residence and/or work. *See* Decl. of Catherine Babbage, ECF No. 13-2, PAGEID # 91–92. In fact, Defendant Ihnen lives and works in the same city where the proposed transferee court sits. *Id.* Thus, given the geographic distribution of the parties and witnesses, the Court finds this factor highly favors transfer. *See Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 939 (E.D. Mich. 2001). It would be much more equitable to have Flatt travel to Kentucky than all the other witnesses travel to Ohio.[7]

The remaining private-interest factors of significance here—judicial economy, practicality, and other interests of justice, as already discussed at length above—as well as the public interest in deciding and trying cases in their home forum, under the governing law of that

---

[6] *See* Pl.'s Discovery Responses, ECF No. 16-1, PAGEID # 480–83 (no treating physicians listed), PAGEID # 488 (no healthcare treatment, no emotional distress damages), PAGEID # 493 (not seeking medical damages), PAGEID # 504 (no expert witnesses identified).

[7] Flatt's distance to Louisville is approximately 180 miles, which is less than Ihnen alone would have to travel to Columbus. Key witness Spillers, though working in Kentucky, actually resides in Tennessee and would have to travel an equal distance to Kentucky as Flatt (but far greater if forced to travel to Ohio). Docs. 13-1, 13-2, PAGEID # 90–91. And that is before considering all of the other witnesses, some of whom will still need to travel within Kentucky, but at far shorter distances than coming to Ohio. *See Carpenter v. Norfolk & W. Ry.*, No. 96-3871, 1998 U.S. App. LEXIS 7694, *10 (6th Cir. Apr. 16, 1998) (recognizing power of trial court to take judicial notice of general time and distance calculations). Moreover, it is hard for the Court to merit Flatt's resistance to traveling out of state when he regularly did so when in the job he is fighting to regain.

forum, all strongly favor transfer. The same driving principles behind the Court's action taken under §§1406(a) and 1631 apply to Aspen's § 1404(a) motion. The Southern District of Ohio simply finds no meaningful connection to this case. Every single relevant allegation of the Complaint occurred in Kentucky—it is the locus of this matter.

Thus, when taken together, these balancing factors weigh in favor of transfer. Aspen has met its burden of showing that transfer of venue to the Western District of Kentucky is warranted under § 1404(a).

## IV.    DISPOSITION

For the foregoing reasons, Aspen's Motion to Transfer Venue (ECF No. 13) is **GRANTED**. Additionally, this Court finds transfer appropriate under §§ 1406(a) and 1631 as to the claims against Defendant Ihnen. This Court hereby **DIRECTS** the Clerk of Courts to **TRANSFER** this action in its entirety to the United States District Court for the Western District of Kentucky, Louisville Division.

**IT IS SO ORDERED.**


*/s/Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE